All of the council, including our student council, Mr. James Jackson and Samantha Davis. We're happy to have you with us this morning. We have only three cases scheduled for oral argument, so I encourage you to take full use of your time, but don't go over your time limit if you can afford it because we have other matters to take care of today. With that said, I will call the first case, which is Vincent Philip Njuguna, I hope I pronounced that correctly, v. Merrick Garland. We'll hear first from Mr. Jackson. Your honors, and may it please the court. Good morning. My name is James Jackson, and I, along with Professor Fatima Maru and Samantha Davis, represent the petitioner in this case, Mr. Njuguna. How do you pronounce his name? Njuguna. The facts before us today tell one story. Mr. Njuguna, a political figure and anti-corruption activist, participated in an anti-corruption investigation into the deputy president of Kenya. At first, the deputy president offered Mr. Njuguna a bribe of $2 million to stop participating in the investigation. When Mr. Njuguna refused that bribe, the deputy president accused him of attempting to sabotage his future plans to run for president. It was after this point that the deputy president, at his secret service, kidnapped Mr. Njuguna, stripped him, beat him with wooden sticks, and squeezed his testicles until the pain was so unbearable that Mr. Njuguna was forced to sign a recantment of his testimony in that investigation. While there, Mr. Njuguna's torturers also forced him to go through his social media accounts and delete various posts that were critical of the deputy president, as well as they expressed his general anti-corruption views. Once out of their custody, Mr. Njuguna continued participating in the investigation, until he was stabbed, which forced him to flee the country ultimately. When presented with these facts, the BIA, in this case, held that the deputy president... What was the situation that forced him to leave the country? What was the... I don't know what's going on here, but... We had that all week. We've had that problem all week. At any rate... Hold on just a minute. What was the incident... This way. What was the incident... This way.  Was there one incident, or was this accumulation of factors, and one day he just woke up and said it's too much? Or was there some incident that occurred that says, I've got to get the heck out of here? It was accumulation, Judge Jolly. Beg pardon? It was an accumulation. It was an accumulation of a factor, Your Honor. You know what, frankly, looking at the facts that are alleged, one comes to a conclusion, or maybe not a conclusion, but certainly an impression, that we're talking about, he's on one side of who's going to get the money for a bribe, and the people that are opposing him are on the other side of who's going to get the money for a bribe. Everybody is corrupt, is what it appeared to me. I mean, the facts indicated that, and he got punished, or he got isolated, or beaten, as he claims, because he was on the wrong side of corruption. So, Your Honor, that is a slight mischaracterization just because of, chiefly, the statements of the Deputy President himself, who repeatedly expressed that his goals were political and his fears were political. He explicitly told Mr. Njuguna that he was afraid of him hurting his chances for a run for president, and while in containment in his first kidnapping, the Deputy President's Secret Service told Mr. Njuguna that he would never get elected while the Deputy President remained. Is it your claim that the facts show that he was a reformer of some kind? At the very least, an activist, Your Honor. He did – at the very least, an activist. Mr. Njuguna conducted TV interviews criticizing the Deputy President and expressing anti-corruption views generally, and he even left the political party he had both worked in government for and been a member of his entire life and ran for parliament as a member of the opposition party, specifically because of the Deputy President's corruption and the extent of government corruption in Kenya. And the – which brings me to one of the main points here in that the overarching question here is whether political opinion is one central reason for the persecution that Mr. Njuguna faced. And it need not be the only reason. All that is required is that the persecution – that political opinion be more than incidental, tangential, or superficial. In the mind of the persecutor? Yes. Yes, Your Honor, in the mind of the persecutor. So let's say your client as a victim was extraordinarily brave disclosing this corruption, but the IJ heard this evidence firsthand, credited your client, BIA looked at it. You've now before us got to show that the record compels that instead of this highly personal revenge story, it was actually because of political opinion. That relies burden. What's your best case where we've reversed the BIA, where there is this arguable mixed motive, but there's a heck of a lot of evidence to suggest this was just a vendetta to punish him? Yes, Your Honor. So this court has only dealt with this type of factual situation once in the case of Chin-Seng Du versus Barr. And in that case, it was – this court found that the BIA was correct in saying that political opinion was not – That's correct, Your Honor. And if that's correct, that means you've got a really high burden? It does, Your Honor, and we're aware of that. And so we'd like to do two things with that. First is we would distinguish ourselves from the facts in Du because in that case you had a private citizen who was facing losing his private business at the hand of a single police chief. And in this case what we have is a public figure who, again, gave TV interviews and ran for parliament. He was a political opponent of the deputy president and perceived by the deputy president as a political threat. And it was only when those threats started to become actualized that the persecution started. Okay, but that cuts both ways, right? I mean these other brave individuals cooperating against Rho Tu were actually killed and he's tortured. But that can be understood to mean this is a highly punitive personal mission. I just want you to push back on me. The other difficulty is your client in the case where he really put himself in peril, if I remember the facts, he had his own dam that he was pressing for. So, again, that doesn't look like political party opposition. That looks like a really tangled old friendship where both men wanted to get money. And so the first thing I would point out to push back on that, Your Honor, is that the evidence of pecuniary interest in this case, it doesn't necessarily hold as much strength as the political motivation. Because Mr. Njuguna was a successful businessman, a successful government employee. And in terms of getting this dam contract, the losing of this particular one wasn't an incredible motivating loss for him. And it was only through this process of working through the dam contracts and his gaining of the recording from Mr. Wang that highlighted to him the extent and depth of corruption in the Kenyan government. And that depth is backed up by the U.S. State Department report. You probably weren't his lawyers below, correct? Correct. Was he pro se? I believe he was pro se before the IJ and then he had a different counsel. Do you know, having read the record, did he make the arguments you're making now to the IJ? He made most of them, Your Honor. How much did he not make? The ones that he didn't necessarily make before the IJ include the specific focusing on the comments that the deputy president made. He testified to those comments but didn't necessarily frame them in enough light to highlight the extent to which politics motivated Mr. Ruto. And because Due is one of the only cases that this court has used, it's necessary and persuasive to look outside the circuit. And so the Sixth Circuit faced a similar circumstance in Skripkov v. Barr in which a Russian political activist was punished. How do you spell the first? Skripkov is S-K-R-I-P-K-O-V. Okay. And then the citation. No, that's fine. Thanks. Okay. And so in that case was, again, a Russian activist who was persecuted by the government for speaking critically of Mr. Putin. And in that court's view, quote, where a petitioner's anti-corruption activities manifest themselves through acts of public protest, the government officials' pecuniary interest and their desire to quell the petitioner's political activities typically become inseparable. And that's exactly the case here. What we have is a petitioner who was incredibly public anti-corruption and incredibly politically anti-corruption, so much so that he ran for office and the deputy president's secret service warned him that he would never win his election as long as the deputy president remained in power. Additionally, it's necessary to look to matter of NM here because even if this court decides that the test in that case is not required, despite the fact that it adopted it in due, what NM also did was outline what an example case of persecution on account of political opinion would look like. And what the board said there was they said that – they gave the examples of when a noncitizen denounces corruption in public or at work, published articles, or organized victims against the corruption. And we have that factor in spades in this case. So your argument is a legal one, that the IJ failed to apply the controlling test? Yes, that is in part of our argument, Your Honor. But if I'm not mistaken, that wasn't made explicit to the BIA, that argument? That's correct, Your Honor. So that's – I hope you're going to save time for the Catt claim because there are sort of procedural bars. Do you want to – are you going to move to the Catt claim or we're closing? I can talk about the Catt claim briefly if you'd like, Your Honor. With regard to Catt, the thing that this court has held previously in Edward B. Ashcroft is that an applicant, because of the nature of the forms in the case, that while just checking the box for protection under the Convention Against Torture is not enough, that evidencing a fear of torture, whether in a notice of appeal – Your case is, in my opinion – I don't speak for my colleagues – very strong on the facts for Catt relief. The problem is our court's procedural bar. If the Catt relief request was denied by the BIA on the ground that you'd failed to brief it, isn't Fifth Circuit law controlling that you have to file a motion to reopen in front of the BIA to say, no, we did brief it? No, Your Honor, it's not. And to our understanding of the law, as long as the petitioner evidences a fear of torture to the BIA and asks them to make a decision on it and briefs it, the arguments – They denied it as being insufficiently brief. Yes, Your Honor. However, that – to force them to file a motion to reconsider would essentially double every Convention Against Torture case. It would, but isn't that Fifth Circuit law? What published decision do you have that we can overlook? We would look to Edward B. Ashcroft again, Your Honor. There, the court held an applicant to have exhausted Catt, even when they didn't explicitly mention that he was applying for this form of relief. And this court said that the immigration judge should not have ignored eligibility for Catt and explained that application responses, which have clearly evidenced their fears of tortures, constitute claims for relief under Catt and in that way completely exhaust the claim and it is properly before this court. And to briefly conclude, Your Honor, we would just say that according to precedent from this court, the factors of the matters of NM test and examples outlined by your sister circuit and the board itself, substantial evidence compels the conclusion that Mr. Njuguna was persecuted on account of his political opinion. We ask this court to reverse. Thank you. Thank you, sir. Mr. Stanton. May it please the court. If it means anything, the captioning system is working just great, so I'm getting everything. It would be wonderful, it would be wonderful if the United States could welcome people from all over the world who face potentially dangerous conditions in their country. However, for better or for worse, Congress has set standards for immigration relief and protection can't be granted. There are substantive rules that must be met. There are procedural rules that must be met. And affording the fullest respect to the petitioner's counsel here, they did a marvelous effort. The Department of Justice very much appreciates it. There are both substantive and procedural deficiencies to petitioner's case here. We do welcome people that are persecuted for their political opinion. People that are persecuted for their political opinion, persons assisting them are killed, they're tortured in prison. The evidence does suggest he was persecuted on a personal vendetta rather than for political opinion. That's a blurry line, right? The court's eroding. It's a blurry line. Yes, it is. Absolutely. And I've read the cases that are cited in both petitioner's briefs and our briefs, and it appears to be like two extremes. Two extremes. On the one side, there's political opinion. I mean, you're out there, you're on a street corner yelling, drain the swamp. We need people like alien nurses, band of untouchables. You're protesting systematic corruption, generalized corruption without singling anybody out. That would be political opinion at one extreme. On the other extreme, you have someone who really had said too much about corruption until he or she was personally affected by it. You don't deny this guy was a political candidate, switched parties against Roto. His claim seems to be like he was persecuted because of anti-corruption political opinion rather than political opinion in general. Going back to the other extreme. Are you sort of making the same mistake legally that the IJ and the BIA may well have made, which is it's got to be one or the other, and the Fifth Circuit's never, ever seen the one that you're advocating, where it's just a pure political opinion. There's no personal involvement. But in fact, as they point out, the test is a mixed motive test. You can have both as central reasons. You don't deny that, right? I would agree with your Honor. Okay, where do I see in the record that the IJ and the BIA accepted that the test is a mixed motive test? That both, it's not one or the other, and they always lose because we can find some personal element. Where in this record, either in the IJ or the BIA, do we see awareness that it can be two motives that qualify? You didn't make that argument. Going back to the question of jurisdiction, the procedural deficiencies, he never argued like it was a mixed motive case. If you look at his brief to the Board of Immigration Appeals, he calls it a quintessal political opinion case. So, I mean, if he made a mixed motive argument, that might have been, like, we'll never solve it. As far as the Board of Immigration Appeals. You admit they didn't decide that. The government's position here is he didn't make most of the arguments that he may well be entitled to relief on. He didn't make the mixed motive argument. He did not make the mixed motive argument. He didn't make the CAC claim sufficiently that we can even review that? Is that correct? If you do an electronic search on the record of appeal, mixed motive, that's just nowhere in the records. So, I mean, did he use some other words? I mean, well, I mean. Well, he argued that there's a nexus to political opinion. That's inherent. Therefore, the courts should apply the right test. He argued that he was being persecuted. Yes, he argued that, yeah. And the test to assess that is the mixed motive test. How could the test not be implicit in what he did preserve and argue? Well, he certainly didn't make an expressed mixed motive argument. To the extent the Honor suggests he made an implicit argument, I would respectfully submit that the agency rejected the implicit argument. Go ahead on that argument. On pages 2 to 3, the Board cites its precedent, CTL and JBN. I don't have the citations ready, but it's in the Board's opinion. So, if they rejected it, so the record doesn't compel that his party position, his anti-corruption political statements was even one motive for his testicles being squeezed by clear government officials in prison. Well, I mean. If they. The agency determined it was the primary motive. It was a personal dispute between him and Mr. Rudeau. So, I mean. I know, but doesn't that slip back into the overlooking of the legal test? The primary? Why are we talking about primaries if both motives can exist? Because, I mean, even if both motives exist, I mean, the test is one central reason. So, I mean, so long as the other reason is subordinate, incidental. I know. I mean, so, to the extent, like, the Board made any type of implicit ruling regarding the political opinion, the Board held that, like, the Board ruled that, like, that motive was only incidental or subordinate. So, because the JVN citation goes direct. You're standing behind either their burden to have to show that that's the record compels a contrary conclusion or that they waived it. That's the government's position. The mixed motive was waived, and if it doesn't, and assuming it wasn't waived and it was implicitly addressed by the Board, we would also submit that the record does not compel, the record does not compel reversal. I mean, as Your Honor indicated, like, just a few moments ago, the Dew case, on page 448, I mean, the court clearly said that if a persecutor sought to punish the non-citizen Dew for threatening the criminal scheme, for filing a criminal complaint against them, or refusing to sell the store, those are personal, not political reasons to punish Dew. So, yeah. But, so, this court has held that if the motivation of the persecutors was to, like, stop the non-citizen from trying to, like, alert the authorities to their corruption scheme, that's a personal motivation rather than a personal case. The test sounds like a fair one. It just sounds like every time we say we really applaud you for that political view, just as we do in this country, people who just stand up and then they never prevail. I mean, I'd also, like, point out that, like, to the extent that, like, the extent that he was arrested the first time a few weeks after refusing to bribe, he testified that the presidential escort, I mean, made him delete some social media posts. But, like, according to his asylum application, those social media posts did not refer to corruption. They criticized Ruto for his leadership style, his leadership style. So that, I mean, leadership style to me goes to character. It goes to something personal. But he hands the investigator a tape implicating the current president. That's corruption. That's not leadership style. I don't think we all knew about that until, like, after he'd already been arrested. Ruto retaliated him. Okay, well, maybe this is moving to the cat claim then because what's going to happen to him when he goes back? Because, well, I mean, to the extent you're talking about Ruto's now the president, I mean, that's outside the record. If he wants to go file a motion to reopen based on changed country conditions, that's an entirely different inquiry than what's going on in this petition. Okay, well, no, that's very important to me. I mean, right, you're aware of your responsibility, right, Berger versus the United States. Your job is not to win. It's to make sure justice is done and innocence doesn't suffer. So when you say to me he can file a motion to reopen, I assume that means the government wouldn't oppose it. There's also, like, the opening inquiry, they probably wanted to look at very similar issues, whether it was personal or political. No, but you would take it on on the merits. You wouldn't oppose a motion to reopen. I cannot find DHS. Fine. You just started. You are the one who presented to me. He can file a motion to reopen. That would get us out of the procedural trap to address the cat claim. So if the government, who has the responsibility and discretion to make sure innocence doesn't suffer, if the following are true, the IJ said this guy's credible. Two other people in a similar situation were killed. He was tortured by the first guard. Sounds like a strong cat claim. I bet the U.S. government would like to litigate it fairly rather than stand behind a procedural bar. And the only way they can get out of the procedural bar is if you don't oppose a motion to reopen. And I heard you say he can file a motion to reopen. So just with that record stated in this little dialogue, we'll see what happens. Well, I mean, again, I do want to do good and know we don't want to send people back to be tortured. But, I mean, as far as an advocate is concerned, I am limited to the record before the court right now, as is the court. So your position on the cat claim is not that it loses under the merits. It's that we can't reach it. We have to dismiss because the specific BIA ruling was one it raised in the first instance. Have I described the government's position correctly? He raised it to the immigration judge. And for whatever reason, he decided not to raise it to the Board of Immigration Appeals. So there's no ruling from the agency. So the court cannot address the merits of the cat claim right now because the agency has not ruled on the claim of the first instance. Can he file a motion to reconsider, yes or no? He could have filed a motion to reconsider. And he not? To the board? Yes. I mean, reconsideration, I'm pretty sure, has a time limit. But a motion to reopen based on change to catch a person is not. If it's untimely, the government can oppose the untimely request or not. Right? The government would have the discretion to oppose it or not. BIA would decide what happens. But you could oppose that or not. But when I oppose the motion – I'm just saying you could, yes or no. We could oppose it? We could oppose it, sure. I mean, it's DHS. I'm with the DOJ. So, I mean, it's DHS. All right. Go ahead with your argument. Yep, that's fine. I've asked a lot of questions. Go ahead. All right. Okay, sure. All right. So, I mean, again, going back to the personal versus political dispute, I mean, based on this court's case law, this court, I mean, may have – I mean, based on due, the court might have reached a different result if it was hearing the evidence in the first instance. But as due says, so long as the record suggests two different conclusions, I mean, that's not compelling evidence, compelling reversal for the same reason. I would also recommend – petitioners cited in their opening brief a case called Marquez v. INS. It's from the Seventh Circuit about 25 years ago. They cite some dicta from the Seventh Circuit. But the actual facts of that case are very similar to due, also very similar to this case as well. Like the non-citizen in Marquez, like they had a vote illegally taken. They claimed they were on the radio, criticized the government officials who seized their vote. And in retaliation, the government officials had them arrested and beaten up. And the Seventh Circuit did the same thing that due did. I mean, so it's a close case. If there's some motives, yeah. But based on the appropriate standard review, we have to affirm. So, I mean, the sentiments expressed in Marquez, which consistent with due, are absolutely amicable to this case. And so, with respect to jurisdiction, Judge Higgins, we've already discussed that. What's the Seventh Circuit case you cited? Marquez v. INS. It's cited in their brief. It's from 1997. I do recommend it. I read it. I'm like, this is our case. There's some dicta that could potentially support petitioners. They cite that in their brief. But the actual holding really supports the government's here. And so, with respect to jurisdiction, Kat, the mixed motive claim, as we discussed before, but also his claim that the board didn't properly apply the NM test, the three-part test. That was never in his brief to the board either. We did not make that argument in our brief, but kind of going through the record, we should have. So, jurisdiction can be raised at any time. He didn't consequential. You forgot. We should overlook it. He didn't raise NM. Yeah. But then you didn't raise the waiver. We did not raise the jurisdiction challenge in the brief. I actually traded arguments. I wasn't the briefing attorney. The briefing attorney was on vacation. We traded arguments. He's taking over one of my cases in a couple of weeks. But just so you're saying. No, but you're laughing a little bit about the substitution. Therefore, we should be forgiven. At the same time, the person in the court. Jurisdiction can be raised at any time, Your Honor. Pardon me? Jurisdiction can be raised at any time, including all arguments. And the court has an obligation to confirm it has jurisdiction to consider a claim. So, I'm just saying the NM argument, that wasn't in the Ministry of Appeal brief either. So, I mean, and to the extent we also discussed. I mean, to the extent. I mean, the agency, at least implicitly, just determined that the motivation here was primarily personal. It was only secondary political opinion. And so, at least implicitly, the immigration judge explicitly stated that he considered all the evidence. Twice, actually, in his opinion. And again, at the end of the day, even if the NM factors were not considered. This court has made clear that it is the motive of the persecutor that is really determinative here. So, to the extent the agency made clear implicitly or expressly that Ruto's motives was mostly personal. I mean, that's really the inquiry. He can make all types of political statements, I mean, elsewhere. But as long as Ruto was only primarily motivated to stop this, stop the NM authorities to. Suppose I hadn't thought of, I'm sure opposing counsel has. Maybe there's dialogue with the government because there is the tragic irony that the persecutor is now the elected president. So, I suppose that could be a country condition change. That probably, I mean, that could support change of conditions argument. But we'll still go into this same inquiry whether, like, Ruto even cares now that he's now president. There was testimony that, like, there was an investigation and it looked like some people were arrested for that. So, I mean, and maybe it's over. I mean, so if he continues, well, if he continues to, like, continue to try to bring Ruto to justice, then that's something that's really outside the present record. So, anyway. I'm all out of my order. Yeah, I caught that. Due process? I mean, I don't know if the court. Not really? Okay. All right. Well, no, no, no, no. Go ahead and address anything you want. I'm prepared to discuss due process. And so, I mean, the indiscernibles, I mean, I would most respectfully submit that we can take a pretty good guess what the missing word is. I mean, he talks about, like, how some people in prison may hold personal grudges against each other, especially when they're blank together for a long time. I think it's pretty obvious. He means, like, in confined spaces. I mean, so, but to the extent that we don't need to guess. I mean, the petitioner himself should be a good source in knowing what he actually said. So, I mean, what's the missing word? I mean, if he doesn't, can't remember, maybe he's a trial counsel member. So, but there's just not enough for a due process violation here. So, I mean, and most of the time, my experience, these indiscernibles, it's only a word or two. I mean, it's not like an entire, I mean, narrative. So, like, if the court reporter, the transcriber can't hear, like, can't understand a whole passage, I mean, my understanding, I would hope that he or she would go alert the agency, and maybe they'd remand for some sort of hearing, but that did not happen here. Just indiscernible, a word or two. With respect to his contention that he didn't have time to testify, I mean, I just encourage the court just to simply read the transcript. I mean, the petitioner here, he had a very hard time staying on topic, answering questions directly. The immigration judge hoped to have everything wrapped up in 30 minutes. That didn't happen. The immigration judge was very, very generous in allowing petitioner to testify extensively, and even his own counsel had a hard time keeping petitioner on topic. So, I mean, there's just no due process violation here. So, anyway, that about covers my points. If the court has any other questions, I mean, I'd be happy to rest on the breeze.  Thank you, counsel. Ms. Davis. Good morning, Your Honors. And may it please the Court. I would like to take some time to respond to the government's arguments regarding mixed motive convention against torture and due process. I would like to also begin with a few notes. First of all, we were made aware from our client after briefing Your Honors that he filed a Can you slow down and talk a little louder? Yes, Your Honor. That's not a criticism. We were made aware by our client after briefing had concluded that he filed a pro se motion to reconsider with the board. On December 21st of 2020, that was denied by the board on August 27th of 2021. We are working to get that evidence now and would be happy to supplement to this court if this court would allow so. In addition, I would like to respond to the government's argument about due v. bar and note that this case is easily distinguishable from due, because in that case, due did in fact give in to the extortion attempts, whereas here, Mr. Njuguna remained steadfast against the attempted bribes and continued speaking out publicly against corruption. As to the government's argument regarding mixed motive, the BIA failed entirely to engage in a mixed motive analysis, and this court has repeatedly remanded to the board for failure to consider the full record. For example, in Berhe v. Barr, Sharma v. Holder, Gutierrez Acosta v. Garland, and Sealed Petitioner v. Sealed Respondent, all were cases where this court determined that the board had not considered whether the persecution was based at least in part on the basis of a protected ground, specifically political opinion. I would also note that in this case, there is no evidence that the board considered the country conditions or the persecutor Mr. Ruto's history of being charged with crimes against humanity by the international court. Here, the IJ is holding that Mr. Njuguna's persecution had nothing to do with political opinion, and the BIA's affirmance of that is facially clear error under this court's precedent, because the board failed to engage in a mixed motive analysis. As to the convention against torture argument, I apologize, Your Honor. I would also mention that under the Supreme Court's precedent in U.V. City of Escondido, only legal issues, not specific arguments pertaining to those issues, need to be exhausted, and Mr. Njuguna raised his nexus argument at each level of appeal, and mixed motive is simply one argument that goes to the nexus element. But you did, in your brief, you did divide it out as a separate issue, didn't you? Your Honor, although our brief may not have had a specific heading, the substance of the brief addressed all of the information required for the board to engage in a mixed motive analysis, and at minimum, his political activities should have made it clear to the board that a mixed motive analysis was needed in this case. As to the convention against torture, as my co-counsel James noted, under Edward B. Ashcroft, Mr. Njuguna has satisfied the standard required in order to maintain the issue for appeal. By mentioning that first point that I don't think either party had pointed out to us, that there was a motion to reconsider file, you presumably reviewed it. Did it contain this argument that the court was wrong about his having failed to brief the cat? In fact, Your Honor, we're still working to obtain the official filed copy, but our client did provide us with his copy that he had provided, and he did brief Cat in mixed motive. Well, that's something that the parties have to confer with, perhaps. I mean, it would depend on what his notice of appeal was to us, right? Did he notice an appeal of that ruling? I suppose that's just something that this is the first time it's being brought up. Opposing counsel hasn't had a chance to respond to this at all. Correct, Your Honor, and it was not included in the record of the case that the government compiled for this appeal. But Mr. Njuguna has raised the nexus argument at each stage of appeal. Before your time runs out on that issue, do you want to address his reliance on that Seventh Circuit Marquez case? If you don't know it, that's all right. It's in the briefs. This case is very similar to Marquez because Mr. Njuguna repeatedly raised his political beliefs in public and television interviews and on social media. He spoke out against the Jubilee political party, which was the ruling party, and in fact left that party because of his anti-corruption views and made his political opinions very well known. And it's also worth noting that he was a very public and influential member within his party, and so his continued insistence on speaking out against the corruption of the ruling party placed Mr. Ruto in jeopardy of his political aspirations of becoming president of Kenya. I'm going to guess, though, when I reread Marquez, it'll probably stand for the authority he suggested, which is even with that level of political involvement, the record doesn't compel the conclusion that the IJ and the BIA were wrong. And right? Your Honor, I believe that Mr. Njuguna's political activities go even far beyond that in Marquez. However, if this court concludes that the evidence does not compel reversal, this court could still remand this case to the board for application of the mixed motive analysis and the other remaining issues in this case. I would like to briefly mention the government's due process argument. That's fine. But your time's running out, and you did hear the government suggest that there could be changed country circumstances. It's probably not something you're in the position to comment on. You agree it's not before us presently? Right? Changed circumstances are not before our court presently, but the government raised it. You agree with that? You heard him say that, right? Yes, Your Honor. Okay. So on due process, 15 seconds is all I've left you. In that case, Your Honor, I would just conclude and say that we respectfully request that the court reverse the board's finding of no nexus and remand this case to the board to address any remaining issues. Thank you. Thank you. Thank you, Ms. Davis. The court thanks counsel on both sides, and especially we want to thank Mr. Jackson and Ms. Davis, our counsel from Texas A&M. You've done a very critical job. We appreciate your services in behalf of Mr. Ngana and this court. The court thanks you very much. With that, we will call the next case for the day.